IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-897

Filed 18 June 2024

Wayne County, No. 21 CVS 1422

HALIKIERRA COMMUNITY SERVICES, LLC, Petitioner,

v.

N. C. DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF MEDICAL ASSISTANCE, DIVISION OF HEALTH BENEFITS, Respondent.

Appeal by Petitioner from Order entered 25 April 2023 by Judge William W. Bland in Wayne County Superior Court. Heard in the Court of Appeals 1 May 2024.

*Ralph Bryant Law Firm, by Ralph T. Bryant, Jr., for Petitioner-Appellant.*

*Attorney General Joshua H. Stein, by Assistant Attorney General Adrian W. Dellinger, for the State.*

HAMPSON, Judge.

## Factual and Procedural Background

Halikierra Community Services LLC (Petitioner) appeals from an Order denying Petitioner's Petition for Judicial Review of a Final Decision issued by an Administrative Law Judge and affirming the Final Decision. The Record before us tends to reflect the following:

Respondent, the North Carolina Department of Health and Human Services (DHHS), is the executive agency responsible for overseeing the provision of certain services, including Medicaid, in North Carolina. The Division of Health Benefits is a

HALIKIERRA CMTY. SERVS., LLC V. N.C. DEP'T OF HEALTH & HUMAN. SERVS.

*Opinion of the Court*

sub-agency within DHHS responsible for the direct administration of North Carolina's Medicaid program. N.C. Gen. Stat. § 108A-54 (2021). During the time periods relevant to this case, Petitioner was a licensed home care agency enrolled with the North Carolina Medicaid Program to provide personal care services to Medicaid beneficiaries.

The requirements for providers to render personal care services to Medicaid beneficiaries are laid out in Medicaid Clinical Coverage Policy 3L. To participate in the Medicaid program, providers are required to enter into a provider agreement with DHHS, 42 CFR § 431.107(b) (2021), and bill DHHS for reimbursement. N.C. Gen. Stat. § 108C-2(10) (2021); 10A N.C.A.C. 22F .0104 (2018). North Carolina's Medicaid Provider Participation Agreement requires providers to abide by all state and federal laws and regulations; DHHS's medical coverage policies; and guidelines, policies, provider manuals, implementation updates, and bulletins published by DHHS or its sub-agencies.

On 24 June 2018, Petitioner was placed on prepayment review pursuant to N.C. Gen. Stat. § 108C-7. Notice of this placement was sent to Petitioner by the Carolina Centers for Medical Excellence (CCME), a DHHS contractor. This notice described the prepayment review process and explained the requirements for a provider to be removed from prepayment review.

Medicaid providers submit claims for reimbursement of services through an electronic system called NCTracks. When a provider is on prepayment review, the

HALIKIERRA CMTY. SERVS., LLC v. N.C. DEP'T OF HEALTH & HUMAN. SERVS.

*Opinion of the Court*

claims submitted to NCTracks are sent to CCME and CCME requests any records required to support each claim. For each claim at issue here, CCME sent Petitioner an "Original Records Request" letter, which listed the specific documents Petitioner needed to submit for the claim to be processed and approved. All of the records requested were documents Petitioner was already required to maintain by law or under the Medicaid Clinical Coverage Policy. If the documents Petitioner submitted were insufficient, CCME sent a second request letter listing the missing documents and providing time for Petitioner to submit those documents. If Petitioner failed to submit the required documents or if the submitted documents showed non-compliance with the relevant clinical policies, CCME processed and denied the claim. In total, CCME denied $982,789.50 of claims submitted by Petitioner while it was on prepayment review.

On 6 August 2018, DHHS sent Petitioner a letter alleging it had "credible allegations of fraud" against Petitioner and notified Petitioner of the immediate suspension of all payments to it as a result, retroactive to 1 August 2018. On 14 December 2018, Petitioner appealed this action by filing a contested case petition with the Office of Administrative Hearings (OAH). On 3 January 2019, DHHS notified Petitioner it had rescinded the August 2018 action.

On 2 October 2018, DHHS sent Petitioner a notice of termination of its participation in the Medicaid provider network due to alleged non-compliance with certain requirements. On 14 December 2018, Petitioner appealed this action by filing

HALIKIERRA CMTY. SERVS., LLC v. N.C. DEP'T OF HEALTH & HUMAN. SERVS.

*Opinion of the Court*

a contested case petition with the OAH. On 15 March 2019, DHHS issued another notice of a decision to terminate Petitioner from the North Carolina Medicaid program. This notice stated Petitioner's termination was due to its failure to meet the minimum claims accuracy rate required during the prepayment review period. On 9 May 2019, Petitioner appealed by filing a contested case hearing with OAH. On 5 July 2019, OAH consolidated the cases regarding the October 2018 and March 2019 actions for hearing. On 17 September 2020, DHHS rescinded both the 2 October 2018 and 15 March 2019 administrative actions. Thus, as of 17 September 2020, all of DHHS's administrative actions initiated against Petitioner had been rescinded.

This matter, including DHHS's denial of payment for the $982,789.50 in claims submitted by Petitioner, came on for hearing before an Administrative Law Judge (ALJ) on 8 December 2020. On 14 July 2021, the ALJ entered a Final Decision, which concluded Petitioner had failed to meet its burden of proving it had provided all of the required documentation for its claims when it submitted the claims and that its claims should not have been denied. Based on its Findings and Conclusions, the ALJ's Final Decision upheld DHHS's decision to deny payment for Petitioner's outstanding claims.

On 10 August 2021, Petitioner filed a Petition for Judicial Review, appealing the Final Decision. The trial court held a hearing on this Petition on 31 January 2023. On 25 April 2023, the trial court entered an Order denying Petitioner's Petition for Judicial Review and affirming the ALJ's Final Decision. On 23 May 2023,

HALIKIERRA CMTY. SERVS., LLC V. N.C. DEP'T OF HEALTH & HUMAN. SERVS.

*Opinion of the Court*

Petitioner timely filed Notice of Appeal to this Court.

## Issues

The issue on appeal is whether the trial court erred by denying Petitioner's Petition for Judicial Review and affirming the Final Decision entered by the ALJ.

## Analysis

### I. Mootness

As an initial matter, during the underlying judicial review, Petitioner contended OAH lost jurisdiction to hear the underlying case when DHHS rescinded the Notices of Termination. Whether Petitioner is entitled to stay in the Medicaid program, however, is merely tangential to the matter at hand in this case—whether Petitioner is entitled to payment for its denied claims.

Indeed, when Petitioner made this argument below, the trial court correctly noted the North Carolina Administrative Code gives providers 18 months to refile denied claims. After that time period elapses, claim denials become final. 10A N.C.A.C. 22B .0104(b) (2018). Here, at the time of the underlying judicial review, the 18-month refile period for the $982,789.50 of Petitioner's denied claims had passed. Therefore, the claim denials were final. The finalization of those claim denials thus became a final agency action, which is appealable under the Administrative Procedure Act. *See* N.C. Gen. Stat. § 150B-43 (2021) ("Any party or person aggrieved by the final decision in a contested case, and who has exhausted all administrative remedies made available to the party or person aggrieved by statute or agency rule,

HALIKIERRA CMTY. SERVS., LLC V. N.C. DEP'T OF HEALTH & HUMAN. SERVS.

*Opinion of the Court*

is entitled to judicial review of the decision under this Article[.]").

II.    Denial of Payment

"The North Carolina Administrative Procedure Act (APA), codified at Chapter 150B of the General Statutes, governs trial and appellate court review of administrative agency decisions." *Amanini v. N.C. Dep't of Hum. Res.*, 114 N.C. App. 668, 673, 443 S.E.2d 114, 117 (1994). The APA provides a party aggrieved by a final decision of an ALJ in a contested case a right to judicial review by the superior court. N.C. Gen. Stat. § 150B-43 (2021). "A party to a review proceeding in a superior court may appeal to the appellate division from the final judgment of the superior court[.]" N.C. Gen. Stat. § 150B-52 (2021). The APA sets forth the scope and standard of review for each court.

The APA limits the scope of the superior court's judicial review as follows:

> (b) The court reviewing a final decision may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as

HALIKIERRA CMTY. SERVS., LLC V. N.C. DEP'T OF HEALTH & HUMAN. SERVS.

*Opinion of the Court*

submitted; or

(6) Arbitrary, capricious, or an abuse of discretion.

N.C. Gen. Stat. § 150B-51(b) (2021).  The APA also sets forth the standard of review

to be applied by the superior court as follows:

> In reviewing a final decision in a contested case, the court shall determine whether the petitioner is entitled to the relief sought in the petition based upon its review of the final decision and the official record.  With regard to asserted errors pursuant to subdivisions (1) through (4) of subsection (b) of this section, the court shall conduct its review of the final decision using the de novo standard of review.  With regard to asserted errors pursuant to subdivisions (5) and (6) of subsection (b) of this section, the court shall conduct its review of the final decision using the whole record standard of review.

N.C. Gen. Stat. § 150B-51(c) (2021).

Although the standards of review superior courts are to apply are clearly

articulated in our statutes, nowhere in its briefing to this Court does Petitioner

clearly articulate the standard of review it believes we should apply.  Indeed, at the

outset of its argument, Petitioner merely restates what is effectively the same

argument it raised below: DHHS "has acted arbitrarily and capriciously and

substantially prejudiced [P]etitioner's rights; exceeded its authority, and acted

erroneously, failed to use proper procedure, or failed to act as required by law[.]"

"The scope of review to be applied by the appellate court under this section is

the same as it is for other civil cases."  N.C. Gen. Stat. § 150B-52 (2021).  "Thus, our

appellate courts have recognized that '[t]he proper appellate standard for reviewing

- 7 -

HALIKIERRA CMTY. SERVS., LLC V. N.C. DEP'T OF HEALTH & HUMAN. SERVS.

*Opinion of the Court*

a superior court order examining a final agency decision is to examine the order for errors of law.' " *EnvironmentaLEE v. N.C. Dep't of Env't & Nat. Res.*, 258 N.C. App. 590, 595, 813 S.E.2d 673, 677 (2018) (quoting *Shackleford-Moten v. Lenoir Cnty. Dep't of Soc. Servs.*, 155 N.C. App. 568, 572, 573 S.E.2d 767, 770 (2002) (citation omitted)). This process is a "twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." *Holly Ridge Assocs., LLC v. N.C. Dep't of Env't & Nat. Res.*, 361 N.C. 531, 535, 648 S.E.2d 830, 834 (2007) (citation and quotation marks omitted). "As in other civil cases, we review errors of law de novo." *Hilliard v. N.C. Dep't of Corr.*, 173 N.C. App. 594, 596, 620 S.E.2d 14, 17 (2005) (citation omitted).

Here, the trial court set out the standard of review it applied in its Order as follows: "Given the nature of the alleged error asserted by the [P]etitioner, this court applied a 'whole record' standard of review of the Final Decision's Findings of Fact and applied a de novo standard of review of the Final Decision's Conclusions of Law." The trial court found there was substantial evidence to support the ALJ's Findings of Fact and the ALJ's Conclusions of Law correctly applied the law to those Findings.

Relevant to the sole issue of payment denial, the ALJ found Petitioner submitted the claims at issue, but it "did not provide the requested additional information to support the denied claims." Further, the ALJ found "[DHHS] introduced evidence of each claim that was submitted by Petitioner . . . For the claims that were denied, the Coverage Policy citation for which the claim was non-compliant

- 8 -

HALIKIERRA CMTY. SERVS., LLC V. N.C. DEP'T OF HEALTH & HUMAN. SERVS.

*Opinion of the Court*

was noted." Additionally, "[DHHS] provided the contemporaneous notes of the initial reviewers regarding the specific policy provisions for which the claims were denied as non-compliant." Importantly, the ALJ found "Petitioner presented no evidence that any one of the 23,000 claims that were denied while Petitioner was on prepayment review should not have been denied at the time of CCME's initial review, and thus, should be overturned." Accordingly, the trial court found there was "substantial evidence to support the Findings of Fact" after reviewing "the whole [R]ecord, the Final Decision, the briefs submitted in this matter, and the arguments of counsel[.]"

"It is well settled that in cases appealed from administrative tribunals, '[q]uestions of law receive de novo review,' whereas fact-intensive issues 'such as sufficiency of the evidence to support [an agency's] decision are reviewed under the whole-record test.' " *N.C. Dep't of Env't. & Nat. Res. v. Carroll,* 358 N.C. 649, 659, 599 S.E.2d 888, 894 (2004) (quoting *In re Appeal of Greens of Pine Glen Ltd.*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)). When the trial court applies the whole record test, it "must examine all record evidence—that which detracts from the agency's findings and conclusions as well as that which tends to support them—to determine whether there is substantial evidence to justify the agency's decision." *Watkins v. N.C. State Bd. of Dental Exam'rs*, 358 N.C. 190, 199, 593 S.E.2d 764, 769 (2004) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lackey v. N.C. Dep't of Hum.*

HALIKIERRA CMTY. SERVS., LLC V. N.C. DEP'T OF HEALTH & HUMAN. SERVS.

*Opinion of the Court*

*Res.*, 306 N.C. 231, 238, 293 S.E.2d 171, 176 (1982) (quoting *State ex rel. Comm'r of Ins. v. N.C. Fire Ins. Rating Bureau*, 292 N.C. 70, 80, 231 S.E.2d 882, 888 (1977)).

Here, the trial court correctly applied whole record review. The Record contains substantial evidence supporting the trial court's decision to affirm the ALJ's Order. In its Findings, the trial court noted its review of the ALJ's Final Determination, the Record in its entirety, and the briefs and arguments of both parties. In turn, the Final Decision pointed to specific evidence in the Record supporting the ALJ's determination. This evidence included DHHS documents for each claim that was denied, noting the Coverage Policy citation with which the claim was non-compliant, and contemporaneous notes made by initial reviewers regarding specific policy provisions with which each claim was non-compliant. DHHS also provided examples of the types of non-compliant claims at issue in this case, which the trial court detailed. Moreover, the Final Decision correctly noted Petitioner presented no evidence that any of its denied claims should not have been denied at the time of CCME's initial review. Thus, based on the evidence in the Record, the trial court correctly applied whole record review to conclude there was substantial evidence to justify the ALJ's Final Decision.

On the issue of payment denial, the trial court concluded the ALJ's Final Decision should be affirmed. Again, the trial court expressly noted it reviewed the ALJ's Conclusions of Law de novo. The ALJ concluded: "Petitioner failed to meet its burden of proving that (i) all required documentation was provided at the time the

HALIKIERRA CMTY. SERVS., LLC V. N.C. DEP'T OF HEALTH & HUMAN. SERVS.

*Opinion of the Court*

claim was submitted and was available for review by the prepayment review vendor and (ii) the claim should not have been denied at the time of the vendor's initial review." The ALJ also noted in its Conclusions that " '[u]nconvered services' includes non-compliance with Clinical Coverage Policies 3K1, 3K-2 and 3L" and "Petitioner agreed as a condition of participation in the NC Medicaid program to abide by the Clinical Coverage Policies developed by [DHHS]."

These Conclusions were based on the trial court's Findings, which show Petitioner failed to provide any evidence its claims complied with the Coverage Policies and should not have been denied. In the absence of evidence to the contrary, the trial court correctly affirmed the ALJ's Final Decision denying payment to Petitioner.

Petitioner alleges the trial court erred in affirming the payment denials because DHHS improperly delegated its discretionary decision-making authority to CCME, a private contractor. On the issue of delegation, this Court has previously concluded "both federal and state regulations clearly contemplate that the role of a private company will be limited to the performance of duties that do not include rendering a discretionary decision as to the most appropriate course of action in a particular case." *N.C. Dep't of Health & Hum. Servs. v. Parker Home Care, LLC*, 246 N.C. App. 551, 566, 784 S.E.2d 552, 561 (2016). Accordingly, this Court held: "a private company . . . does not have the authority to substitute for DHHS" in making decisions "that require the exercise of discretion and the application of DHHS's policy

HALIKIERRA CMTY. SERVS., LLC V. N.C. DEP'T OF HEALTH & HUMAN. SERVS.

*Opinion of the Court*

priorities[.]" *Id.*

In the case *sub judice*, however, CCME did not make any discretionary decisions. Rather, CCME merely applied expressly established criteria as articulated in the Clinical Coverage Policies. While Petitioner is correct to say DHHS cannot delegate discretionary decisions to a private contractor, payment denial in this instance did not entail the exercise of any discretion on CCME's part. Petitioner's attempt to cast these claim denials as an administrative sanction in the prepayment review process is misplaced. Whether Petitioner was on prepayment review is entirely separate from whether it properly filed its claims with the required documentation in order to be reimbursed. As DHHS aptly notes, "[t]he ability to deny payment for claims that do not meet [the Clinical Coverage Policies] requirements is inherent to the claim submission and review process." This is consistent with the trial court's Finding that "[w]hile these denied claims may have been the basis of the two termination notices, the causal relationship does not go both ways and the recission of the termination notices does not prove that the claims were improperly denied."

Thus, we conclude the trial court correctly applied the appropriate standards of review in the instant case. Therefore, the trial court did not err in affirming the ALJ's Final Decision. Consequently, the trial court properly denied Petitioner's Petition for Judicial Review.

## Conclusion

HALIKIERRA CMTY. SERVS., LLC V. N.C. DEP'T OF HEALTH & HUMAN. SERVS.

*Opinion of the Court*

Accordingly, for the foregoing reasons, we conclude there was no error in the trial court's Findings or Conclusions and affirm its Order.

AFFIRMED.

Judges GORE and FLOOD concur.